UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RANDAL DAVID PENNS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>　　　　Defendants. | Case No. 2:24-cv-01230-EJY<br><br>**ORDER** |

Pending before the Court is Plaintiff Randal Penn's Complaint for Review of Final Decision of the Commissioner of Social Security and his Brief in support thereof. ECF Nos. 6, 10. Also pending is the Commissioner's Cross-Motion to Affirm. ECF No. 12. The Court has reviewed all briefing related to these Motions and finds as follows.

**I.   Background**

Plaintiff applied for a period of disability and Social Security Disability Insurance ("SSDI") benefits on July 2, 2021.[1] Administrative Record ("AR") 303. In his application, Plaintiff alleged he became disabled on May 29, 2021 (AR 304), and his disabilities arose from multiple sclerosis ("MS"), post-traumatic stress disorder ("PTSD"), a traumatic brain injury, migraines, depression, vertigo, and memory loss. AR 356. The state disability agency issued its initial determination on September 30, 2024, finding Plaintiff was not disabled. AR 189-98. This decision was affirmed upon reconsideration. AR 199-208.

Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on April 22, 2022. AR 227. At the hearing, which took place on May 11, 2023, Plaintiff argued his MS had worsened since the prior ALJ's decision as evidenced by increased lesions identified on his brain and the fact that he now required a cane to ambulate. AR 44. Plaintiff testified he could only

---

[1] The record shows Plaintiff previously applied for SSDI benefits twice before and received unfavorable decisions by ALJs each time. AR 144, 170. The ALJ in the instant application considered the res judicata effect of the most recent prior decision under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), and found that Plaintiff had rebutted the presumption of continuing non-disability. AR 10-11. Neither party challenges this finding. Therefore, the Court does not further discuss the prior decisions.

stand for approximately five to ten minutes at a time because his legs would "just give out," leading to repeated falls. AR 52, 59. The ALJ issued a decision of non-disabled on July 3, 2023. AR 7-26. On March 14, 2024, Plaintiff submitted a request for review by the Appeals Council on September 1, 2023. AR 298-302. The Council denied review on May 7, 2024, thus making the ALJ's decision the final decision of the Commissioner. AR 1-3. Plaintiff thereafter timely initiated the instant action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

(a)     the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

  (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

  The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

  The five steps include:

  Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

  Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

  Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

  Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

  Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")],

or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098–99 (internal alterations omitted).

### III. The ALJ's Decision

At step one, the ALJ stated Plaintiff last met insured status under the Social Security Act on December 31, 2021, establishing the relevant time period as May 29, 2021 through December 31, 2021. AR 13. The ALJ determined Plaintiff had not engaged in substantial gainful activity during this period. *Id*. At step two, the ALJ found Plaintiff suffered from the following severe impairments: MS, headaches, degenerative disc disease of the cervical, thoracic, and lumbar spine, thoracic kyphosis, depression, and PTSD. *Id*. The ALJ further found Plaintiff's vestibular dysfunction, degenerative joint disease of the bilateral hips, dental impairment, and vision impairment to be non-severe. *Id*. At step three, the ALJ found that neither Plaintiff's physical nor mental impairments met or medically equaled the severity of any "listed" impairment in 20 C.F.R., Part 404, subpart ("subpt.") P, Appendix ("App.") 1. AR 14-16.

In preparation for step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking for up to six hours each in an eight-hour workday for total time on his feet to be no more than six hours in an eight-hour workday, frequent bilateral foot and hand controls, occasional overhead reaching bilaterally, frequent reaching in other directions, handling, fingering and feeling bilaterally, occasional climbing ramps and stairs, no climbing ladders, ropes or scaffolds, occasional stooping, kneeling, crouching and crawling, no unprotected heights, no more than occasional exposure to moving mechanical parts and motor vehicle operation, no more than occasional work outdoors, no more than occasional exposure to non-atmospheric extremes of cold and heat, no more than occasional exposure to vibration, can understand, remember and carry out detailed but not complex tasks, frequent contact with supervisors, and occasional contact with coworkers and the public.

AR 17.

In arriving at this RFC determination, the ALJ considered Plaintiff's subjective symptom testimony, including Plaintiff's allegations that his impairments limited his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb, see, remember, complete tasks, concentrate, understand, follow

4

instructions, use hands, and get along with others. AR 18. Though the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause these alleged symptoms, the ALJ noted that the record "more often documents full range of motion, normal motor strength, intact sensation, and vestibular function within normal limits," as well as generally minimal or normal findings with regard to mental functioning. AR 18-19. In particular, the ALJ determined that Plaintiff's cane was not medically necessary based on physical therapy records indicating improved gait and balance, as well as reported activities that included light household chores, some shopping, and coaching his son's football team. AR 19-20. With respect to Plaintiff's alleged symptoms arising from mental impairments, the ALJ cited to Plaintiff's ability to drive and manage his finances, as well as his hobbies of writing, and doing podcasts, to support her determination that Plaintiff could perform detailed but not complex work. AR 20-21.

At step four, the ALJ determined Plaintiff was unable to perform any of his past relevant work as a screen printer, garbage collection driver, psychiatric aide, sales route driver, dump truck driver, or heavy truck driver. AR 23.

At step five, the ALJ concluded that based on Plaintiff's age, education, work experience, and RFC there were jobs Plaintiff could perform that existed in significant numbers in the national economy. AR 24. In stating this decision, the ALJ noted the Medical-Vocational Guidelines (20 C.F.R. Part 404, subpt. P, App. 2 (the "Grid Rules")) direct a finding of not disabled if Plaintiff is limited to light work. *Id.* (citing Grid Rule 202.14). However, the ALJ also noted that Plaintiff's ability in this case was impeded by additional limitations and, therefore, the ALJ relied on the testimony of a VE to determine whether, with these limitations added, a sufficient number of jobs Plaintiff could perform still existed in the national economy. *Id.* Based on the VE's testimony, the ALJ found Plaintiff retained the RFC to perform work as a merchandise marker, routing clerk, electrical accessories I assembler, and mail clerk. AR 24-25.

Although this determination was based on a standing or walking limitation of no more than six hours in a workday, the ALJ stated that based on the VE's testimony her ultimate determination would not differ if Plaintiff was instead limited to standing or walking no more than four hours in a workday. *Id.* at n.3. The ALJ supported this finding by citing to the Program Operations Manual

5

System ("POMS"), which directs a finding of not disabled in situations in which a claimant falls between two Grid Rules and the ALJ determines their exertional capacity is only "slightly reduced" from the higher Grid Rule.  POMS DI 25025.015.

Under this direction, the ALJ concluded that "through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." AR 26.  On this basis, the ALJ denied Plaintiff's applications for disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act prior to December 31, 2021, the date last insured.  *Id*.

## IV.  The Parties' Arguments

Plaintiff raises two challenges to the ALJ's decision.  First, Plaintiff contends the ALJ's RFC determination regarding Plaintiff's mental limitations is not supported by substantial evidence because it does not include a moderate limitation in concentration, persistence, and pace.  ECF No. 10 at 5.  Plaintiff argues the ALJ identified a moderate limitation in step three of the analysis, but failed to include this in the RFC determination.  *Id*. (citing *Saucedo v. Colvin*, Case No. 6:12-cv-02289-AC, 2014 WL 4631225 (D. Or. Sept. 15, 2014), and *Lubin v. Comm'r Soc. Sec. Admin.*, 507 Fed.Appx. 709 (9th Cir. 2013)).  Plaintiff further contends the ALJ erred by rejecting the mental limitations noted in the prior agency medical findings ("PAMFs") without providing sufficient reasons.  Plaintiff says the ALJ's reasoning—that these limitations used "vague and undefined terms and are only somewhat consistent with the evidence of adequate mental functioning"—does not provide "an accurate and logical bridge from the evidence to her evaluation of the state agency opinions." ECF No. 10 at 6-7 (citing AR 22).

Second, Plaintiff asserts the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony in which Plaintiff explained his MS symptoms prevent him from standing and walking for six hours in a workday.  *Id.* at 8.  Here, Plaintiff focuses on the ALJ's conclusion that his use of a cane was not medically necessary.  Citing *Estes v. R.R. Ret. Bd.*, 776 F.2d 1436 (9th Cir. 1985) and *Wilcox v. Sullivan*, 917 F.2d 272 (6th Cir. 1990), Plaintiff says MS is a progressive disease that often involves periods of remission requiring an ALJ to consider whether

evidence of reduced symptoms may indicate a period of remission rather than lack of significant limitations. ECF No. 10 at 8-10. Plaintiff also cites to several portions of the record conflicting with the ALJ's conclusion that a cane was not medically necessary while arguing the ALJ failed to adequately explain how Plaintiff's daily reported activities conflict with Plaintiff's subjective testimony regarding his difficulty standing and walking. *Id.* at 10-14.

The Commissioner responds to Plaintiff's first challenge by arguing that Plaintiff confuses the evaluation of functional limitations in step three of the sequential evaluation with the more detailed assessment performed when reaching an RFC. ECF No. 12 at 6-7. The Commissioner says the ALJ provided ample citation to the record to support her RFC determination with regard to Plaintiff's mental limitations, including to the state agency examinations and Plaintiff's daily activities. The Commissioner further cites to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), to support the ALJ's conclusion that an RFC limiting Plaintiff to simple tasks adequately reflected a moderate limitation in concentration and consistency. ECF No. 12 at 7.

Responding to Plaintiff's second challenge, the Commissioner contends that while portions of the record may indicate some evidence of falling, and issues with balance and gait, the record more often indicated full range of motion, normal gait, and normal motor strength. *Id.* at 12. The Commissioner says an RFC determination is meant to represent the most a claimant can do not the least, and evidence that Plaintiff requires a cane sometimes does not represent the most he can do despite his limitations. *Id.* at 13 (citing 20 CFR 404.1545(a)(1). The Commissioner also argues Plaintiff's positive reaction to conservative treatment and reported daily activities of performing light household chores and coaching his son's football team part of the year conflicted with his subjective testimony regarding the need for a cane. *Id.* at 14-17.

**V.    Discussion**

    **A.**    <u>Mental Residual Functional Capacity</u>.

Plaintiff's first argument regarding the ALJ's mental RFC assessment is without merit. Plaintiff asserts that because the ALJ found Plaintiff suffered from moderate difficulty in concentration, persistence, and pace during step three of the sequential analysis, it was error for the ALJ not to account for such limitation in the RFC assessment. ECF No. 10 at 5. However, as

7

explained in the ALJ's decision, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment[;]" rather, "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." AR 16-17. Even if this were not the case, the ALJ noted within her discussion during step three that although Plaintiff had "reported his ability to concentrate is impaired and he can pay attention for a few seconds to a few minutes … the evidence noted logical and lineal thought processes with … intact attention, and intact concentration." AR 15-16. This is the same conclusion the ALJ came to during step four where she noted the objective evidence indicated Plaintiff retained "intact short- and long-term memory, intact attention, [and] intact concentration." AR 19. In other words, the ALJ's discussion in performing the RFC assessment was consistent with that during step three.

Plaintiff cites to *Lubin*, an unpublished Ninth Circuit decision, to support his argument. ECF No. 10 at 5. However, while *Lubin* held it was error for an ALJ not to include moderate difficulties in concentration within the claimant's RFC when such a limitation was noted earlier by the ALJ, *Lubin*, 507 Fed.Appx. at 712, a separate, published line of cases holds that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174. As the ALJ sufficiently explained in her step three analysis and RFC assessment, the medical record of evidence indicated intact attention and concentration. The Court therefore finds no error with the ALJ's mental RFC determination.

    B. <u>Plaintiff's Testimony Regarding Ability to Stand/Walk</u>.

The Court next considers Plaintiff's argument that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony that he cannot stand and walk for six hours per day. Plaintiff asserts that it was error for the ALJ to disregard portions of the record indicating Plaintiff required a cane and instead citing to records indicating improved gait and balance. ECF No. 10 at 8-13. Plaintiff cites to *Estes* for the proposition that the nature of MS as a progressive disease with periods of remission and exacerbation is such that ALJs must consider whether evidence of reduced symptoms may represent a period of remission rather than evidence that a claimant is not

disabled. *Id.* at 8-9. *Estes*, however, was a case about Railroad Retirement Board benefits, not Social Security. 776 F.2d at 1436. While the court in *Estes* did cite to a Social Security decision by the Sixth Circuit, *Parish v. Califano*, 642 F.2d 188 (6th Cir. 1981), *Estes* does not appear to ever have been cited by the Ninth Circuit in the context of a claim for Social Security benefits.[2] It may be "a well-accepted practice to use case law construing disability under the Social Security Act as precedent for cases coming under the Railroad Retirement Act," *Poole v. Railroad Retirement Bd.*, 905 F.2d 654 (2d Cir. 1990), Plaintiff cites no authority suggesting the opposite is true.

Notwithstanding Plaintiff's discussion of *Estes*, the Court questions whether the ALJ fully considered the record before her. For example, the ALJ cited to several portions of the record to support her observation that "physical therapy records document a significant improvement in gait mechanics without use of a cane," AR 19, but this characterization accurately represents only one of the reports cited. That report, consisting of physical therapy progress notes from August 30, 2021, states Plaintiff self-reported his condition had improved since beginning physical therapy. AR 476. Even with this consistency, however, the objective assessment section of the report states that although Plaintiff "demonstrate[d] mild improvements in overall function," he continued to demonstrate "sig[nificant] nausea" when turning his head while walking as well as "sig[nificant] imbalance when stepping over objects." AR 477. The report goes on to identify Plaintiff as a significant fall risk. AR 478. The remaining reports cited by the ALJ on this point cut against, rather than support, her finding of significant improvement. For example, the ALJ cites to a report from March 30, 2022 (after the relevant time period) as evidence that Plaintiff's balance had improved. AR 19 (citing AR 990). Indeed, the March 30, 2022 report states Plaintiff had "no improvements in strength or gait," and continues to have "dec[reasing] balance and vertigo." AR 990.

Although the ALJ cited to physical therapy records stating Plaintiff was able to ambulate without a cane with normal gait speed while avoiding obstacles (AR 998), the same records states

---

[2] Even if the Court applied Sixth Circuit case law, Plaintiff's argument would not prevail because the issue considered in *Parish* was *when* a claimant who was undisputedly disabled first became disabled. 642 F.2d at 189. As other courts within the Sixth Circuit have acknowledged, the reasoning used to resolve this question cannot be directly applied when determining *whether* a claimant is indeed disabled at all under the Social Security Act. *See, e.g.*, *Wood v. Astrue*, Case No. 2:10-CV-132, 2011 U.S. Dist. LEXIS 89363, at *10 (E.D. Tenn. July 26, 2011) ("Being undisputedly disabled and attempting to determine the onset date is a different question from whether a plaintiff is yet disabled.") (distinguishing *Estes* and *Parish*).

9

Plaintiff can walk for ten minutes without significant pain *only* while using a cane. AR 999. Every other physical therapy report in the record indicated the same, save for those indicating that this goal was not met at all. *See generally*, AR 815-1018.

This last point is key. The determinative issue is whether Plaintiff was limited to sedentary work, and thus whether a finding of disabled would be directed by the Grid Rules, is how long Plaintiff was able to stand or walk per day during the relevant time period. Even accepting as true the ALJ's statement that the record indicated significant improvement in gait mechanics, evidence of normal gait would not provide clear and convincing reasons for discounting Plaintiff's testimony that he cannot stand for more than ten minutes because, as well-established—"[g]ait—how a person walks or moves—does not relate to how long a person can walk, stand, or sit." *Blondell J. v. Comm'r, SSA*, Case No. 3:22-cv-1612-JR, 2024 WL 3964754, at *6 (D. Or. Aug. 26, 2024); *see also Rosemary M.H. v. Comm'r of Soc. Sec.*, Case No. C22-5993-BAT, 2023 WL 6307249, at *2 (W.D. Wash. Sep. 28, 2023) ("[O]bservations of normal gait over a few minutes are not determinative of how long a person can stand or walk."); *Terry M. v. Comm'r of Soc. Sec.*, Case No. 23-5556 SKV, 2024 WL 578099, at *5 (W.D. Wash. Feb. 13, 2024) (ALJ committed reversable error by relying on evidence that a claimant "was able to ride a motorcycle" to discount testimony that she could only sit for fifteen minutes, when said evidence "d[id] not shed light on how long Plaintiff would ride"). Simply said, the ALJ committed harmful error when she equated gait to the length of time Plaintiff can walk and stand.

While the Court agrees that record medical evidence for the relevant time period relating to Plaintiff's use of a cane is not a model of clarity, the ALJ has an obligation to develop the record and explain why the pieces of evidence indicating use of a cane is not medically necessary are more persuasive than those indicating the opposite. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The determinative issue in deciding whether Plaintiff is disabled is *how long* Plaintiff can stand and walk without a cane; it is *not* merely *whether* he can ever do so. Thus, portions of the record demonstrating Plaintiff's ability to ambulate without a cane for less than ten minutes do not qualify as substantial evidence for discounting Plaintiff's testimony that he requires a cane. The ALJ failed to cite any portion of the record indicating improved mobility without a cane that did not also indicate

Plaintiff could not walk for ten minutes without significant pain unless he was using a cane and/or that he remained a significant fall risk.

Regarding Plaintiff's daily reported activities, the Court notes that most of the activities cited by the ALJ only indicate standing or walking for a few minutes at a time. *See, e.g.*, AR 374 (stating that Plaintiff takes five minutes to iron clothes, seven minutes to water lawn, and five minutes to vacuum). The ALJ also repeatedly cited to Plaintiff's testimony that he coached his son's football team. AR 19-20. The ALJ cited and sought no evidence demonstrating this activity required Plaintiff to stand and move for extended periods of time. *See generally*, AR 7-76. Because the ALJ failed to develop the record as it relates to Plaintiff coaching his son's football team, reference to this activity does not qualify as substantial evidence. *See Hummel v. Kijakazi*, Case No. 22-36016, 2023 WL 7318492, at *2 (9th Cir. Nov. 7, 2023) (Because "[t]he ALJ did not develop the record about coaching at the April 2021 hearing beyond asking a single question … we cannot say that the limited information about coaching can by itself constitute substantial evidence supporting a finding that [Plaintiff]'s symptoms were not as severe as he testified.") (cleaned up) (citing *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017)).

The Court is also not persuaded by the Commissioner's argument that because an RFC determination is meant to represent the most a claimant can do, records indicating Plaintiff could walk without a cane at least some of the time were sufficient to meet the substantial evidence necessary to confirm the ALJ's RFC determination. ECF No. 12 at 13. Again, the key determination in this case is *how long* Plaintiff can stand or walk without use of a cane. While SSR 96-8p states an RFC represents "the most" a claimant can do despite their limitations, evidence that Plaintiff can sometimes walk without a cane but for less than ten minutes does not support a determination that *the most* Plaintiff can walk is six, or even four, hours per day.

Finally, the ALJ misstated the record by asserting that Plaintiff denied falls during the relevant time period. AR 19. The two records cited by the ALJ state that Plaintiff reported no falls since his previous visit, but one of these reports is from three months after the relevant time period (AR 988), and the other was made only one week after Plaintiff's previous visit (AR 615-17). It was plain error for the ALJ to represent as persuasive evidence a one-week period in which Plaintiff

11

reported no falls as indicating he had not fallen at all during a much longer relevant time period. In fact, contrary to the ALJ's representation, a physical therapy record from August 20, 2021, states that "[Plaintiff] report[ed] he had fallen twice [that] morning." AR 479. Plaintiff fell the first time "when he got up to walk out of his room." *Id*. Plaintiff fell a second time "when he started to walk agin [sic] after getting up …." *Id*.

Based on the foregoing, the Court finds the ALJ erred by discounting Plaintiff's testimony that he could only stand for five to ten minutes at a time. The ALJ's RFC determination that Plaintiff was able to stand and walk for six hours per workday is not supported by substantial evidence in the record. Considering the centrality of Plaintiff's ability to walk without a cane to the ALJ's ultimate determination of disability, this error was not harmless.

## VI.   Remedy

The only remaining question is that of remedy. Though remanding for further consideration is more typical, the Court concludes that directing an award of benefits is appropriate here. Under both the regulations and the testimony of the vocational expert, Plaintiff would be limited to sedentary work if he can stand or walk in four hours or less. C.F.R. § 404.1567; AR 73. Under the Grid Rules, this would direct a finding of disabled for a claimant of Plaintiff's age and background. Grid Rule 201.12. The ALJ addressed this by explaining she found that a limitation to standing for four hours or less would be only slightly reduced from a capacity for light work, which would direct a finding of not disabled under POMS DI 25025.015. AR 25 n.3. However, the Court finds the medical evidence of record, when taken as a whole, indicates Plaintiff would struggle to stand for more than ten minutes without a cane. The record further indicates that this limitation was not expected to significantly improve with treatment. AR 990 (noting that Plaintiff "demonstrate[d] plateau in function" and that he had "reached max benefit" of physical therapy). Put simply, a capacity to stand and walk that is measured in minutes rather than hours cannot reasonably be construed as "slightly" reduced from a capacity to do so for six hours. Further, given the narrowness of the relevant time period at only seven months, it is doubtful any additional relevant medical evidence could be produced beyond what is already included in the record. Because the Court finds no reasonable review of the record would result in a finding of greater capacity, and because the

guidelines direct a finding of disabled for a claimant of Plaintiff's background who is limited to sedentary work, the Court remands this case with instructions to award benefits.

### VII. Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Complaint seeking reversal of the ALJ's decision (ECF No. 6) is GRANTED. The case is REMANDED to the agency with directions to immediately award benefits.

IT IS FURTHER ORDERED that the Clerk of Court must close this case and enter judgment accordingly.

Dated this 6th day of May, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE